| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| JAMES J. FLANAGAN SHIPPING CORPORATION, § § § | |
| Plaintiff, § § | |
| *versus* § § | CIVIL ACTION NO. 1:10-CV-718 |
| DEPARTMENT OF THE ARMY OF THE UNITED STATES, § § § § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Department of the Army of the United States' ("Army") Motion to Dismiss (#6), wherein the Army seeks dismissal of Plaintiff James J. Flanagan Shipping Corporation's ("Flanagan") complaint for lack of subject matter jurisdiction. Having reviewed the pending motion, the submissions of the parties, and the applicable law, the court is of the opinion that the Army's motion should be granted.

I.  Background

On August 19, 1998, Flanagan entered into a terminal and stevedoring contract with the Military Traffic Management Command (currently known as the Military Surface Deployment and Distribution Command). Pursuant to the parties' agreement, Flanagan was responsible for loading and unloading military cargo and performing related tasks at the Port of Beaumont, Texas. At the conclusion of the contract term, Flanagan claimed that the Army owed an outstanding balance of $79,631.32 for various hardship and overtime costs. After unsuccessfully seeking payment from the Army, Flanagan filed suit in the United States Court of Federal Claims in 2002. In that suit, the Army argued that the court lacked jurisdiction over the dispute because Flanagan had not

received a final decision from the Army's contracting officer denying its claim, as required by the Contract Disputes Act of 1978 ("CDA"). That action was subsequently dismissed pursuant to a motion for non-suit by Flanagan. Thereafter, Flanagan continued its discussions with the Army regarding the purported outstanding balance and received a formal denial of its claim in 2008. On December 16, 2008, Flanagan filed a complaint with the Armed Services Board of Contract Appeals ("ASBCA"), alleging it was entitled to hardship and overtime costs for its performance under the stevedoring contract.

In the Summer of 2010, the parties engaged in settlement negotiations, though the outcome of those discussions is in dispute. Flanagan maintains that the negotiations resulted in a settlement agreement wherein the Army offered a payment of $79,631.21, which Flanagan accepted. The Army counters that no settlement was reached, although it determined that it owed Flanagan $8,478.25 for labor and equipment and sought to make payment in that amount. The Army claims that its contracting officer intended to request that Flanagan send an invoice in the amount of $8,478.25 for the labor and equipment but instead delegated the task to a second contracting officer, who erroneously requested an invoice for the entire claimed amount. Without regard to the existence of a valid settlement agreement, it is undisputed that the Army processed a delivery order on July 27, 2010, to pay the full outstanding balance of $79,631.32. Several days later, the Army informed Flanagan that it mistakenly sent the delivery order and was cancelling the scheduled payment.

On August 9, 2010, Flanagan and the Army participated in a telephone conference with the ASBCA administrative judge, in which Flanagan raised the "new" issue of enforcing the purported settlement agreement. The judge ruled that the ASCBA had jurisdiction pursuant to the

CDA over the parties' original dispute but lacked the authority to hear Flanagan's claims regarding the settlement without the contracting officer's decision on that issue. In light of that ruling, Flanagan cancelled a scheduled ASCBA hearing and filed this suit on November 8, 2010, seeking enforcement of the parties' purported settlement agreement.

The Army filed the instant motion on January 13, 2011, arguing that this court lacks subject matter jurisdiction. Specifically, the Army avers that this dispute is governed by the CDA, which requires Flanagan to exhaust all administrative remedies before seeking relief in a federal district court. Flanagan counters that jurisdiction in this court is proper because this is a maritime action subject to the original jurisdiction of the district courts.

II. Analysis

    A. Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). In addition to federal question and diversity cases, federal district courts possess original jurisdiction over matters arising in admiralty or maritime law. *See* U.S. CONST. art. III, § 2; 28 U.S.C. § 1333; *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004); *Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 394 (5th Cir. 1991). "In determining the boundaries of admiralty jurisdiction, [courts] look to the purpose of the grant." *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991). The "'fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.'" *Norfolk S. Ry. Co.*, 543 U.S. at 25 (quoting *Exxon Corp.*, 500 U.S. at 608) (emphasis in original) (citations omitted). The "'trend in modern admiralty case law . . . is to

3

focus the jurisdictional inquiry on whether the nature of the transaction was maritime.'" *Temple Drilling Co.*, 946 F.2d at 395 (quoting *Exxon Corp.*, 500 U.S. at 611); *accord Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 284 (5th Cir. 2009). For contract disputes, such as this one, "'the boundaries of admiralty jurisdiction—as opposed to torts or crimes—[are] conceptual rather than spatial . . . .'" *Norfolk S. Ry. Co.*, 543 U.S. at 23 (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)). "'[T]he true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions.'" *Exxon Corp.*, 500 U.S. at 610 (quoting *New Eng. Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1, 16 (1871)); *Alleman*, 580 F.3d at 284. District courts "should look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." *Exxon Corp.*, 500 U.S. at 610. Here, the parties agree that the stevedoring contract at issue is maritime in nature. *Am. Stevedore v. Porellos*, 330 U.S. 446, 456 (1947) ("A stevedoring contract is maritime."); *New Orleans Stevedoring Co. v. United States*, 439 F.3d 89, 92 (5th Cir. 1971) (holding that the parties' stevedoring agreement was a maritime contract). Nonetheless, the contract incorporated Federal Acquisition Regulation ("FAR") 52.233-1, subjecting all disputes arising under or relating to the agreement to the provisions of the CDA. *Cnty. Waste, Inc. v. United States*, 752 F. Supp. 449, 450 (S.D. Fla. 1990) (contract incorporating FAR 52.233-1 was subject to CDA); *United States for Use & Benefit of Phase II Concrete Contractors, Inc. v. St. James Constr. Co.*, 724 F. Supp. 442, 443 (N.D. Tex. 1989) (same). The sole issue, therefore, is what effect, if any, the CDA has on this court's maritime jurisdiction.

"'"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."'" *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996))); *see Krim v. PcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005); *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 913, 919 (5th Cir. 2001); *accord Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011); *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007); *In re TXNB Internal Case*, 483 F.3d 292, 298 n.6 (5th Cir.), *cert. denied*, 552 U.S. 1022 (2007).

The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Hertz Corp. v. Friend*, __ U.S. __, __, 130 S. Ct. 1181, 1194 (2010); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)); *accord Howery*, 243 F.3d at 916 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

"A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009); *see Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010); *Ramming v. United States*, 281 F.3d 158, 158 (5th Cir. 2001). When examining a motion

to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), however, unlike a motion to dismiss under Rule 12(b)(6), the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010); *Ramming*, 281 F.3d at 161. Indeed, in ruling on such a motion, a court may consider "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Spotts*, 613 F.3d at 565 (quoting *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 154 (2009); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

B. The CDA

The CDA, 41 U.S.C. §§ 601-613, applies to contracts entered into by an executive agency of the United States and a contractor. *See* 41 U.S.C. § 602. Federal district courts lack jurisdiction over government contract claims that are subject to the Act. *See United States v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1134 (N.D. Ga. 1992) (citing *McDonnell Douglas Corp. v. United States*, 754 F.2d 365, 370 (Fed. Cir. 1985)). Accordingly, under the CDA, claims between the United States and government contractors must first be decided by the contracting officer. 41 U.S.C. §§ 601(3), 605(a). The officer's decision may then be appealed to an agency board of contract appeals or the Court of Federal Claims. 41 U.S.C. §§ 607(d), 609(c). The Act, however, makes special provision for maritime contracts, as follows:

> Appeals under paragraph (g) of § 607 of this title and suits under § 609 of this title, arising out of maritime contracts, shall be governed by Chapter 20 [Suits in

>Admiralty Act] or 22 [Public Vessels Act] of Title 46 as applicable, to the extent that those chapters are not inconsistent with this chapter.

41 U.S.C. § 603. The United States Court of Appeals for the Fifth Circuit has interpreted this language as vesting jurisdiction for appeals from the administrative determination of claims in the district courts, rather than completely excluding maritime contracts from the CDA. *Century Marine, Inc. v. United States*, 153 F.3d 225, 229 n.4 (5th Cir. 1998), *cert. denied*, 526 U.S. 1039 (1999); *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 94 (5th Cir. 1992); *River & Offshore Servs. Co. v. United States*, 651 F. Supp. 276, 279 n.2 (E.D. La. 1987) ("The CDA applies to maritime contract disputes."). "In the context of the [CDA], 'appeals' are requests for relief from adverse administrative contract determinations." *Bethlehem Steel Corp.*, 951 F.3d at 94. Therefore, before Flanagan may seek recovery in federal district court, it must first file a proper administrative claim with the contracting officer and receive a denial of that claim. *Id.*

A claim is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2009). While a contractor's claim need not use particular language to satisfy the CDA's requirements, "'the contractor must submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *SITCO Gen. Trading & Contracting Co. v. United States*, 87 Fed. Cl. 506, 508 (2009) (quoting *Contract Cleaning Maint. Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). Notably, it is not necessary for a claim to be "in dispute" when submitted. *Reflectone, Inc. v. Dalton*, 60 F.3d 1527, 1583 (Fed. Cir. 1995) (en banc); *Paradigm Learning, Inc. v. United States*, 93 Fed. Cl. 465, 472-73 (2010). A contractor's first written, non-routine demand for

7

payment as a matter of right may be recognized and treated as a claim for purposes of the CDA. *Reflectone, Inc.*, 60 F.3d at 1583; *CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760, 762-63 (2004). Therefore, in determining whether a contractor's written demand constitutes a claim, the court must consider "the regulations implementing the CDA, the language of the contract in dispute, and the facts of the case." *BLR Grp. of Am., Inc. v. United States*, 96 Fed. Cl. 9, 13 (2010) (quoting *Reflectone, Inc.*, 60 F.3d at 1575).

The court first notes that while Flanagan may have sought and received a final decision from the Army's contracting officer regarding its *original* claim for payment, its effort to enforce the purported settlement agreement is regarded as a separate dispute requiring its own jurisdictional prerequisites. *See Sarang Corp. v. United States*, 76 Fed. Cl. 560, 567 (2007) (holding that plaintiff must submit an independent claim with respect to a dispute arising out of the parties' settlement agreement, notwithstanding the fact that it filed a claim pursuant to the parties' original dispute); *Gardner Mach. Corp. v. United States*, 14 Cl. Ct. 286, 293 (1988) (stating that to meet jurisdictional prerequisites of the CDA, contractor was required to submit a new claim once settlement negotiations derailed).

Here, Flanagan has submitted a series of documents in opposition to the Army's motion. Only one of these could possibly be construed as a claim—a letter sent from Flanagan to Army contracting officer Michael Schreiber, which states: "As per your telecon yesterday with Gwen Stockton of our office, please find enclosed our invoice for the settlement of the outstanding claims." The court views this letter as a non-routine request for payment. *See James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996) (contractor's termination of settlement proposal is not a routine request); *Reflectone, Inc.*, 60 F.3d at 1577 (characterizing

non-routine submissions as demands for payment for "unforeseen or unintended circumstances . . . [which] cause an increase in contract performance costs"); *CPS Mech. Contractors, Inc.*, 59 Fed. Cl. at 763 n.2 (request for equitable adjustment due to change in scope of contractual duties was non-routine).

Curiously, Flanagan did not submit the referenced invoice. Instead, it proffered a receipt for an Army delivery order in the amount of $79,631.32 issued to "pay an outstanding hardship claim to JJ Flanagan." Without an opportunity to examine the invoice, the court is unable to determine whether it sought, "as a matter of right, the payment of money in a sum certain," as required by 48 C.F.R. § 2.101. The Army's subsequent execution of the delivery order, however, suggests the invoice met this standard. Therefore, this letter, with the accompanying invoice, arguably constituted a written demand for payment as a matter of right that could be deemed a claim under the statute. *See H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1565 (Fed. Cir. 1995) (contractor's letter specifically requesting sum certain qualified as CDA claim); *NCLN20, Inc. v. United States*, 82 Fed. Cl. 103, 122-23 (2008) (plaintiff's written demand to contracting officer seeking sum certain for unpaid invoices viewed as CDA claim); *Mills v. United States*, 69 Fed. Cl. 358, 364 (2006) (plaintiff's letter constituted claim where it sought adjustment of contract terms and referenced contracting officer's prior proposed modification).

Nonetheless, without documented evidence of a claim, the court must dismiss Flanagan's complaint. The record is also devoid of evidence that Flanagan received a final decision from the contracting officer on its purported claim or that the contracting officer failed to issue a final decision within the statutory time frame. *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("We have held, based on the statutory provisions [of the CDA], that

jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim."). Therefore, dismissal is appropriate, as it is unclear whether the jurisdictional prerequisites of the CDA have been satisfied. This dismissal is without prejudice, however, as the court will allow Flanagan to file an amended complaint accompanied by documentation of its settlement agreement claim and the Army's denial of that claim within thirty (30) days from the date of this order. *See Remolcadores de Malaga, S.A. v. United States*, No. 87-1739, 1990 WL 128214, at *7 (E.D. La. Aug. 24, 1990) (dismissing plaintiff's claim without prejudice where court was unable to determine from record evidence whether plaintiff presented a claim to the contracting officer). If Flanagan fails to comply, the dismissal will be with prejudice.

III. Conclusion

Based on the foregoing analysis, the court finds that Flanagan has failed to establish that it complied with the jurisdictional prerequisites of the CDA prior to filing suit. Accordingly, jurisdiction is lacking, and Flanagan's claims are dismissed without prejudice at this time.

SIGNED at Beaumont, Texas, this 27th day of May, 2011.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE